UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| EILEEN L. ZELL, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:16-cv-01293-AGF |
| DAVID DALE SUTTLE, et al., | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the motion (Doc. No. 4) of Defendants Michael Mindlin and Elizabeth Kurila to dismiss Plaintiff's complaint on res judicata grounds or, alternatively, to transfer this case to the Southern District of Ohio. For the following reasons, the Court will grant the motion to dismiss and will deny the motion to transfer as moot.

Upon review of the record, the Court also notes that the file contains no proof of service upon the remaining Defendant in this case, David Dale Suttle, by Plaintiff, nor entry of appearance on behalf of Suttle. Because it does not appear that service of Plaintiff's complaint has been timely made upon Suttle, as required by Federal Rule of Civil Procedure 4(m), the Court will also dismiss Plaintiff's complaint against Suttle without prejudice.

## BACKGROUND

The action arises out of Plaintiff Eileen Zell's attempts to collect a debt owed by Plaintiff's nephew, Mindlin, to whom Plaintiff loaned $90,000. As alleged in the complaint, on January 30, 2001, Mindlin signed a $90,000 promissory note payable to Plaintiff. Mindlin's wife, Kurila, and Mindlin's business partner, Suttle (Mindlin, Kurila, and Suttle, collectively, "Defendants"), co-signed the note. Defendants made some payments on the loan, but, eventually, the parties disagreed over the amount that remained due.

On October 12, 2010, Mindlin and Kurila filed a complaint for declaratory relief in Ohio state court (the "Ohio state court action"), seeking a declaration as to the enforceability of the promissory note discussed above and as to any remaining amount due on the note. Plaintiff filed an answer and counterclaim against Mindlin and Kurila, together with a third-party complaint against Suttle and the architectural firm that Mindlin and Suttle owned, alleging that Defendants were in default under the terms of the note. On July 5, 2011, Mindlin and Kurila filed a motion for summary judgment, which the state court granted on statute-of-limitations grounds, applying Ohio's six-year statute of limitations.

Plaintiff filed an appeal, and on August 7, 2012, the Ohio appellate court affirmed the trial court's judgment.[1] The appellate court applied Ohio choice-of-law rules and agreed with the trial court that Ohio's statute-of-limitations governed the promissory

---

[1] Plaintiff attached a copy of the Ohio appellate court's August 7, 2012 decision as an exhibit to her complaint.

note, rather than Missouri's longer statute of limitations. The appellate court also rejected Plaintiff's arguments for tolling and waiver. Plaintiff filed three motions for reconsideration (again arguing that the statute of limitations should be tolled), each of which was denied by the state appellate court, in decisions dated October 25, 2012, December 31, 2012, and February 12, 2013.[2]

Plaintiff alleges that on August 14, 2012, one week after the Ohio appellate court issued its initial decision, Mindlin sent Plaintiff an email from which Plaintiff asserts that she "discovered *for the first time* that the Defendants *secretly never had any intention* to fully repay the $90,000 that they had borrowed from her." (Doc. No. 1 at 28) (emphasis in original.) Plaintiff quotes Mindlin's email as stating "[W]e always intended to screw you out of the money.'" *Id.* at 27 (alteration in original). However, Plaintiff attached Mindlin's August 14, 2012 email to her complaint, and the portion of the email from which Plaintiff quotes reads in full:

> Congratulations Eileen. You win.
>
> You can now go to your grave confident in the knowledge that you were right all along: we always intended to screw you out of the money. After all, it is so much easier to believe that lie than face your own demons. But, remember that we offered you over $104,000 plus interest…twice. You accepted…twice. I put in writing that we would protect you if Suttle failed to perform. I was writing the contracts. We were willing to do just about

---

[2] In their motion to dismiss or transfer, Mindlin and Kurila assert that on May 10, 2013, Plaintiff filed a separate suit in the United States District Court for the Southern District of Ohio, against the attorneys who represented her in the Ohio state court action, asserting claims for legal malpractice, breach of fiduciary duty, and breach of contract. Plaintiff is represented by a different attorney (her son) in her suit before this Court.

> anything to pay you back for helping us… short of putting my family at risk.

(Doc. No. 1-23 at 2) (ellipses in original.)

Plaintiff filed the current complaint in this Court on August 6, 2016. She alleges that Defendants obtained the loan described above (and extensions for repayment) from Plaintiff under false pretenses, while secretly knowing that they never intended to repay the loan in full; falsely promised to repay the loan in full; and made false allegations before the trial court in the Ohio state court action. She asserts that these actions give rise to claims against Defendants for violation of the Racketeer Influenced and Corrupt Organization ("RICO") Act, 18 U.S.C. §§ 1961-1968, fraud, fraudulent representation, breach of contract, breach of promissory note, and promissory estoppel.

Mindlin and Kurila have moved to dismiss the complaint on res judicata grounds or, alternatively, to transfer this case to the Southern District of Ohio, pursuant to 28 U.S.C. § 1404(a). In support of their motion to dismiss, they argue that the Ohio state court action resulted in a valid, final judgment on the merits, arising out of the same transaction or occurrence that is the subject matter of Plaintiff's complaint in this case, and that Plaintiff's complaint in this case is therefore barred by res judicata. Alternatively, Mindlin and Kurila argue that the case should be transferred to the Southern District of Ohio, where Plaintiff's legal malpractice action is pending, for the convenience of the parties and witnesses, and in the interest of justice.

In response to the motion to dismiss, Plaintiff argues that, with respect to her breach of contract, breach of promissory note, and promissory estoppel claims in this

case—which she admits are "directly related to the subject matter of the Ohio [state court action]"—the Ohio state court's dismissal on statute-of-limitations grounds does not bar claims brought in a federal court sitting in a different state, such as this Court. (Doc. No. 7 at 11.) With respect to her fraud and RICO claims, Plaintiff argues that these claims are not barred because they "were based on Defendant Mindlin's admission [in his August 14, 2012 email] that the Defendants secretly never intended to fully repay the $90,000 that they had borrowed." *Id.* at 17. Plaintiff argues that because this email was sent after the state appellate court issued its initial decision in the Ohio state court action, Plaintiff could not have brought her fraud and RICO claims in that action. Plaintiff also opposes Defendants' alternative motion to transfer, arguing that a transfer to the Southern District of Ohio would be inconvenient and unjust.

In reply, Mindlin and Kurila argue that Plaintiff misunderstands the doctrine of res judicata and its application to all of Plaintiff's claims and that, in any event, the statements made by Mindlin in his August 14, 2012 email cannot credibly support a new fraud or RICO claim. They also reassert that if the Court does not dismiss Plaintiff's complaint, it should transfer the case to the Southern District of Ohio.

## **DISCUSSION**

The defense of res judicata "may be raised in a motion to dismiss when the identity of the two actions can be determined from the face of the petition itself," including "public records and materials embraced by the complaint and materials attached to the complaint." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012) (internal citations omitted). In considering a motion to dismiss

5

based on res judicata, the Court must "accept the non-moving party's factual allegations as true and construe all reasonable inferences in favor of the nonmovant." *Schaefer v. Putnam*, 827 F.3d 766, 769 (8th Cir. 2016) (citation omitted).

"The law of the forum that rendered the first judgment controls the res judicata analysis." *Id.* (citation omitted). "It is now settled . . . that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Rick v. Wyeth, Inc.*, 662 F.3d 1067, 1069 (8th Cir. 2011) (citation omitted).

Under Ohio law, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995). Thus, there are four elements for establishing res judicata under Ohio law:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 415 (6th Cir. 2016) (interpreting Ohio law). "[R]es judicata bars any claim that was or could have been raised at trial or on direct appeal." *State v. Steffen*, 639 N.E.2d 67, 76 (Ohio 1994).

A dismissal on the basis of the statute of limitations is a final decision "on the merits" for res judicata purposes under Ohio law. *See, e.g., Loudermill v. Cleveland Bd. of Educ.*, 721 F.2d 550, 558 (6th Cir. 1983) (holding that "it is clear that Ohio treats such

6

dismissals [on statute-of-limitations grounds] as 'on the merits'" for res judicata purposes) (citation omitted); *LaBarbera v. Batsch*, 227 N.E.2d 55, 63 (Ohio 1967) (holding that "[t]he dismissal of plaintiff's original action on the ground that the statute of limitations had expired prior to its commencement was on the merits" and that such judgment "was res judicata and the question of its erroneousness should not have been inquired into" by a second court). Thus, here, the first element of res judicata is satisfied, regardless of whether the Ohio state court's statute-of-limitations analysis was correct. *See LaBarbera*, 227 N.E.2d at 60 ("[T]he doctrine of res judicata would be abrogated if every decision could be relitigated on the ground that it is erroneous, and there would be no stability of decision, or no end to litigation.").

There is also no question that this case involves the same parties as the Ohio state court action. And at least with respect to Plaintiff's breach of contract, breach of promissory note, and promissory estoppel claims, Plaintiff admits that the claims could have been (and largely were) litigated in the Ohio state court action and arose out of the same transaction as the Ohio state court action. Therefore, these claims are clearly precluded.

With respect to Plaintiff's fraud and RICO claims, these claims, too, are based on Defendants' alleged actions in obtaining a loan from Plaintiff, failing to repay the loan, and prevailing on their legal claim to avoid repaying the loan. Thus, they are based on the same "transaction, or series of connected transactions," defined under Ohio law as the "common nucleus of operative facts," *Grava*, 653 N.E.2d at 229, that was the subject matter of the Ohio state court action and could have been litigated in that action. It does

7

not matter that Plaintiff has repackaged the facts into the new legal theories of fraud and RICO. *See id.* ("That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions," even if "the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.").

Nor does Plaintiff's reliance on the purported new evidence of Defendants' fraud—Mindlin's August 14, 2012 email—change the result. The Court is far from convinced that Plaintiff could not have brought her fraud and RICO claims until she received Mindlin's August 14, 2012 email. Plaintiff's assertion that she "discovered for the first time" Defendants' fraudulent intent when she received the email is, at best, disingenuous.[3] A review of the email, which is attached to Plaintiff's complaint, contains no indication of fraudulent intent, and in fact, suggests the opposite—that any allegation of fraudulent intent is a "lie." Thus, the email does not support Plaintiff's assertion that she could not have raised her fraud and RICO claims in the Ohio state court action.

In any event, under Ohio law, res judicata applies "even to instances in which a party is prepared to present new evidence or new causes of action not presented in the first action, or to seek remedies or forms of relief not sought in the first action." *Am. Home Prod. Corp. v. Tracy*, 787 N.E.2d 658, 661 (Ohio 2003); *see also Grava*, 653

---

[3] At worst, the Court questions whether Plaintiff's counsel, in quoting an excerpt of the email out of context, complied with his obligations under Federal Rule of Civil Procedure 11(b).

N.E.2d at 229 (holding that res judicata "applies to extinguish a claim by the plaintiff against the defendant *even though the plaintiff is prepared in the second action [to] present evidence or grounds or theories of the case not presented in the first action*").

Finally, even if Plaintiff's fraud and RICO claims were not barred by res judicata, the Court would find that these claims, which by Plaintiff's own assertion rely entirely on Mindlin's August 14, 2012 email to allege fraudulent intent, fail to state a claim as a matter of law under Federal Rule of Civil Procedure 12(b)(6).

In sum, the Court will grant Mindlin and Kurila's motion to dismiss, and the Court will deny the alternative motion to transfer, as moot.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Michael Mindlin and Elizabeth Kurila's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**, and their alternative motion to transfer pursuant to 28 U.S.C. § 1404(a) is **DENIED as moot**. (Doc. No. 4.)

**IT IS FURTHER ORDERED** that Plaintiff's complaint against Defendant David Dale Suttle is **DISMISSED without prejudice**, for lack of timely service.

A separate Order of Dismissal will accompany this Memorandum and Order.

*(signature)*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of November, 2016.